IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL CALL, individually and on behalf of a class of persons similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>WELLS FARGO & COMPANY, a Delaware corporation; and THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., a United States corporation, as Trustee of the Wells Fargo Capital XIV Trust,<br><br>      Defendants.<br>_____/ | No. C 11-5215 CW<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING AS MOOT PLAINTIFF'S MOTION TO CERTIFY CLASS (Docket Nos. 7 and 17) |

    Defendant Wells Fargo & Company moves to dismiss Plaintiff Daniel Call's complaint against it.[1]  Plaintiff opposes Defendant's motion.  Plaintiff has filed a motion for class certification, which Defendant opposes.  Having considered the papers filed by the parties and their oral arguments at the hearing, the Court GRANTS Defendant's motion to dismiss and DENIES AS MOOT Plaintiff's motion for class certification.

---

[1] On November 17, 2011, the parties filed a stipulation to dismiss Defendant The Bank of New York Mellon Trust Company, N.A. pursuant to Rule 41(a)(1)(A).  Docket No. 6.

BACKGROUND

The following facts are taken from Plaintiff's complaint and from certain documents submitted by Defendant, of which the Court takes judicial notice.[2]

Trust preferred securities are a form of preferred stock commonly issued by bank holding companies since 1996 to increase their Tier I regulatory capital amount, which is used by the Federal Reserve to measure the strength and financial stability of bank holding companies.  Compl. ¶¶ 12-13.

Plaintiff was a holder of Defendant's Capital XIV 8.625% Enhanced Trust Preferred Securities at the time of their redemption on October 3, 2011.  Id. at ¶¶ 1, 16.  The offering documents for the securities, which were issued on August 19, 2008, included the Prospectus, the Amended and Restated Declaration of Trust and Trust Agreement (Amended Trust

---

[2] Defendant requests that the Court take judicial notice of certain documents filed with the Securities and Exchange Commission (SEC), some of which are documents whose contents are alleged in the complaint.  See Request for Judicial Notice (RJN). Plaintiff agrees that the Court may take judicial notice of Exhibits One through Nine, which are SEC filings that relate to the securities at issue in the instant case.  "Public records, such as SEC filings, are properly the subject of judicial notice, and routinely considered in deciding a motion to dismiss in a securities case."  In re Extreme Networks, Inc., 573 F. Supp. 2d 1228, 1232 n.2 (N.D. Cal. 2008) (collecting cases).  See also Dreiling v. Am. Express Co., 458 F.3d 942, 946 (9th Cir. 2006) (stating that, in reviewing a dismissal under Rule 12(b)(6), the court "may consider documents referred to in the complaint or any matter subject to judicial notice, such as SEC filings") (internal citations omitted).  Accordingly, the Court GRANTS Defendant's request as to Exhibits One through Nine.

Plaintiff opposes Defendant's request for judicial notice of Exhibits Ten and Eleven, which are SEC filings with excerpts from other banks' contracts.  The Court finds these materials to be immaterial to the resolution of this motion and DENIES Defendant's request as to Exhibits Ten and Eleven.

1 Agreement), and the Fifth Supplemental Indenture, which
2 supplemented the Junior Subordinated Indenture and Fourth
3 Supplemental Indenture (hereinafter, collectively referred to as
4 the Indenture).  Id. at ¶¶ 16, 17-18; RJN, Exs. 1, 5, 6.  The
5 Indenture is governed by New York law.  Junior Subordinated
6 Indenture, RJN Ex. 1, at 29; Fifth Supplemental Indenture, RJN Ex.
7 6, at 395.  The Trust Agreement is governed by Delaware law.
8 Amended Trust Agreement, RJN Ex. 6, at 446.

9 The Indenture gives Defendant the right to redeem shares in
10 whole or in part at its option at any time on or after September
11 15, 2013.  Fifth Supplemental Indenture, RJN Ex. 6, at 383.  The
12 Indenture also gives Defendant the right to redeem the securities
13 "in whole but not in part after the occurrence of a  . . . Capital
14 Treatment Event . . . prior to September 15, 2013."  Fifth
15 Supplemental Indenture, RJN Ex. 6, at 383.  The Prospectus defines
16 "Capital Treatment Event" as

> our reasonable determination that, as a result of any
> amendment to, or change in, including any announced
> proposed change in, the laws or regulations of the
> United States, or any political subdivision thereof or
> therein, or as a result of any official or
> administrative pronouncement or action or judicial
> decision interpreting or applying such laws or
> regulations, which amendment or change is effective or
> which proposed change, pronouncement, action or decision
> is announced on or after the date hereof, there is more
> than an insubstantial risk that Wells Fargo will not be
> entitled to treat an amount equal to the liquidation
> amount of the capital securities as Tier I capital, or
> the equivalent thereof, for purposes of the capital
> adequacy guidelines of the Federal Reserve, as currently
> in effect and applicable to Wells Fargo.

3

Prospectus, RJN Ex. 5, at 291.[3]  This definition appears in a section of the Prospectus that summarizes the Indenture terms and which begins with a statement that the "summary is not complete" and that parties should also refer to the Indenture itself and supplements thereto.  Id. at 279.  The parties agree that this provision should be interpreted in accordance with New York law.  Mot. at 9; Opp. at 5 n.3.  If a capital treatment event occurs, Defendant is entitled to redeem the securities for their face value of twenty-five dollars, plus any interest accrued to the date of redemption; this is the liquidation amount.  Compl. ¶ 21.  See Amended Trust Agreement, RJN Ex. 6, at 407, 409.

On July 21, 2010, the President signed into law the Dodd-Frank Wall Street Reform and Consumer Protection Act, including the Collins Amendment.  Compl. ¶¶ 14-15.  One provision of the Collins Amendment was to disallow the treatment of trust preferred securities as Tier I capital.  Id. at ¶ 15.  For trust preferred securities issued before May 19, 2010 by large bank holding companies, the new requirements will be phased in incrementally from January 1, 2013 through January 1, 2016.  Id.  Before January 1, 2013, bank holding companies will be allowed to

---

[3] The language in the definition contained in the Fourth Supplemental Indenture and the Base Indenture varies slightly from that in the definition in the Prospectus.  For example, the former two documents use "announced prospective change" instead of "announced proposed change."  See Subordinated Indenture, RJN Ex. 1, at 14-15; Fourth Supplemental Indenture, RJN Ex. 3 at 211; Prospectus, RJN Ex. 5, at 291.  The Base Indenture inserts the word "aggregate" before the words "liquidation amount".  Subordinated Indenture, RJN Ex. 1, at 15.  In his opposition, Plaintiff points to the definition in the Prospectus as the controlling definition.  Opp. at 3.  Defendant argues that the differences are not material, Mot. at 7, n.1; Reply at 4, n.2, and the Court agrees.

4

treat all of these outstanding trust preferred securities as Tier I capital. Id. Until the end of the phase in period on January 1, 2016, they will be allowed to treat at least some of the securities as Tier I capital. Id.

On September 1, 2011, Defendant announced that it would redeem the Capital XIV Trust Preferred Securities on October 3, 2011. Compl. ¶ 22; Form 8-K, RJN Ex. 8, at 485. In the announcement, Defendant stated that it "has determined that a Capital Treatment Event occurred with the passage of the Dodd-Frank Wall Street Reform and Consumer Protection Act." Form 8-K, RJN Ex. 8, at 485. At that time, Defendant reported that the principal amount of the securities was $690 million, at twenty-five dollars per share, or 27.6 million shares. Id. On October 3, 2011, Defendant redeemed all of the securities. Compl. ¶ 25.

Plaintiff filed the instant action on October 25, 2011. He seeks to bring it on behalf of himself and all those who held the securities on October 3, 2011. Compl. ¶ 32. Plaintiff charges Defendant with breach of contract and breach of the implied covenant of good faith and fair dealing for redeeming its Capital XIV 8.625% Enhanced Trust Preferred Securities on October 3, 2011, before the optional redemption date of September 15, 2013. Id. at ¶¶ 1, 4-7. Plaintiff alleges that he and the class members have been damaged in the amount of $116,253,185, that is, the amount of interest that 27.6 million shares would have earned between October 3, 2011 and September 15, 2013, the optional redemption date. Id. at ¶ 45.

LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff.  NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile.  Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990).  In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint."  Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

6

DISCUSSION

Defendant argues that Plaintiff's complaint should be dismissed, because it did not breach the contract as a matter of law and because exercising contractual rights cannot be a breach of the implied covenant of good faith and fair dealing. Defendant also argues that Plaintiff lacks standing to sue.

I.   Breach of Contract

Defendant argues that Plaintiff fails adequately to allege that it breached the relevant contracts, because the Dodd-Frank Act was a capital treatment event and therefore its redemption of the securities was authorized by the Indenture as a matter of law. In response, Plaintiff argues that the Dodd-Frank Act will not constitute a capital treatment event until January 1, 2016, that the premature redemption was contrary to the parties' reasonable expectations and that Defendant's redemption was unreasonable. Plaintiff alternatively argues that the capital treatment event clause is ambiguous.

As previously noted, New York law governs the application of the capital treatment event clause. "Under New York law, 'the fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent.'" Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co., 375 F.3d 168, 177 (2d Cir. 2004) (quoting Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569 (2002)). "Typically, the best evidence of intent is the contract itself; if an agreement is 'complete, clear and unambiguous on its face[, it] must be enforced according to the plain meaning of its terms.'" Id. (quoting Greenfield, 98 N.Y.2d at 569) (formatting in original).

7

1  "The language of a contract is not made ambiguous simply because
2  the parties urge different interpretations." Seiden Associates,
3  Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992).
4  "Whether or not a writing is ambiguous is a question of law to be
5  resolved by the courts." Eternity Global Master Fund Ltd., 375
6  F.3d at 178 (quoting W.W.W. Assoc., Inc. v. Giancontieri, 77
7  N.Y.2d 157, 162 (1990)).

8  Both parties agree that, as of January 1, 2016, Defendant
9  will not be able to treat an amount equal to the liquidation
10 amount of all the securities as Tier I capital, because the
11 relevant provision of the Dodd-Frank Act will be fully implemented
12 on that date.  The parties also agree that, between January 1,
13 2013 and January 1, 2016, Defendant will lose the ability to treat
14 some of the securities as Tier I capital.

15 Plaintiff argues that the Dodd-Frank Act cannot qualify as a
16 capital treatment event until January 1, 2016, because between
17 January 1, 2013 and January 1, 2016, Defendant will be able to
18 consider at least part of these securities as Tier I capital and
19 thus will not have lost the ability to treat the entirety of the
20 aggregate liquidation amount of the securities as Tier I capital;
21 under this interpretation, Defendant could only redeem the
22 securities when it lost the ability to treat the last dollar of
23 the securities as Tier I capital.  However, the capital treatment
24 event clause is not reasonably susceptible to this interpretation.
25 Under the clause, the triggering event is when Defendant
26 reasonably believes that it will not be able "to treat an amount
27 equal to the liquidation amount of the capital securities as Tier
28 I capital."  RJN, Ex. 5, at 291.  Under the plain meaning of this

8

phrase, this condition is satisfied when Defendant reasonably anticipates that it will be able to treat as Tier I capital an amount <u>less than</u> the liquidation amount of the securities, i.e., the first dollar.  As both parties agreed at the hearing, the clear intention of this clause is to protect Defendant from having to continue to pay the high interest rate of the securities if it reasonably believes that it will lose the benefit of being able to treat these securities as Tier I capital.  It would not comport with this intention if the phrase were interpreted to prevent Defendant from invoking its protections if Defendant reasonably believed that it could not treat ninety-nine percent of the securities as Tier I capital, yet that is what Plaintiff's construction would mean.

   Further, under the clause, Defendant was not required to wait to redeem the securities until it actually lost the ability to treat the first dollar of securities as Tier I capital.  Instead, the clause is clearly written with forward-looking language and states that the event is triggered when Defendant determines there is "more than an insubstantial risk that it <u>will</u> not be entitled to treat" the securities as such.  RJN, Ex. 5, at 291 (emphasis added).  It specifically encompasses "proposed" or "prospective" changes in the law that were announced after the securities were offered.  RJN, Ex. 5, at 291; Fourth Supplemental Indenture, RJN Ex. 3 at 211.  When the Dodd-Frank Act was signed into law, there was significantly more than an insubstantial risk that Defendant would not be able to treat the full amount of the securities as Tier I capital.

9

To the extent that Plaintiff argues that Defendant acted on its determination that a capital treatment event had occurred arbitrarily or unreasonably because it did so thirteen months after the enactment of the Dodd-Frank Act, this is irrelevant. The Fifth Supplemental Indenture specifically allows Defendant to redeem the securities before its optional redemption date "after the occurrence of a . . . Capital Treatment Event," with no time limitation as to how long after the capital treatment event Defendant may exercise this right.  It does not provide that Defendant waives the right by failing to exercise it within a particular amount of time after the event.  Further, rather than being prejudiced by Defendant's decision to wait to exercise the redemption right, the putative class members benefited by earning additional interest during that thirteen-month period.

Further, under the definition of capital treatment event, Defendant was required to make a "reasonable determination" that the triggering conditions had occurred; Defendant was not required to be correct in its determination.  Under the allegations of the complaint, Defendant's determination was reasonable, because the enactment of the Dodd-Frank Act into law meant that Defendant would not be able to treat an amount of the securities equal to the liquidation amount as Tier I capital.

Thus, Plaintiff has failed to state a claim against Defendant for breach of contract, and the Court GRANTS Defendant's motion to dismiss this claim.  Because no amendment can cure these deficiencies without contradicting the terms of the governing contracts, dismissal is without leave to amend.

II.  Breach of Covenant of Good Faith and Fair Dealing

10

New York law implies a covenant of good faith and fair dealing "pursuant to which neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 407 (2d Cir. 2006) (citation omitted). The covenant "can only impose an obligation consistent with other mutually agreed upon terms in the contract. It does not add to the contract a substantive provision not included by the parties." Broder v. Cablevision Sys. Corp., 418 F.3d 187, 198-99 (2d Cir. 2005) (citation omitted).

Defendant argues that Plaintiff's claim should be dismissed because it attacks Defendant's exercise of an express contractual right. Plaintiff responds that the complaint properly alleges that Defendant's "premature redemption" breached the implied covenant of good faith and fair dealing, because it deprived the putative class members "of a significant benefit of the agreement: the right to receive the above-market interest rate payments until at least September 15, 2013." Opp. at 12 13. However, the language of the contract makes clear that this "right" was not absolute and was instead contingent upon certain conditions, including that a capital treatment event not occur and that, should one occur, Defendant not exercise its right to redemption.

Plaintiff also argues that Defendant did not act in good faith in invoking the capital treatment event provision, reasoning again that the Dodd-Frank Act created a risk of changed capital treatment for the full liquidation value only on January 1, 2016 and that therefore Defendant acted in bad faith by redeeming the securities before it faced risk of changed capital treatment for

11

1 this full value.  However, as stated above, the express contract
2 terms give Defendant the right to invoke this provision in such an
3 event.

4 　　　　Further, this claim is redundant to Plaintiff's breach of
5 contract claim and New York law does not recognize a separate
6 cause of action for breach of the implied covenant of good faith
7 and fair dealing when the claim is based on the same allegations
8 as a breach of contract claim.  See Serdarevic v. Centex Homes,
9 LLC, 760 F. Supp. 2d 322, 334 (S.D.N.Y. 2010) ("A claim for breach
10 of the implied covenant [of good faith and fair dealing] will be
11 dismissed as redundant where the conduct allegedly violating the
12 implied covenant is also the predicate for breach of a covenant of
13 an express provision of the underlying contract.").

14 　　　　Accordingly, the Court GRANTS Defendant's motion to dismiss
15 Plaintiff's claim alleging breach of the covenant of good faith
16 and fair dealing.  Because no amendment can cure these
17 deficiencies without contradicting the terms of the governing
18 documents for the securities, dismissal is without leave to amend.

19 　　　　Because the Court dismisses both of Plaintiff's claims, it
20 does not reach Defendant's argument that Plaintiff lacks standing
21 to bring these claims.

CONCLUSION

For the reasons set forth above, the Court GRANTS Defendant's motion to dismiss (Docket No. 7) and DENIES AS MOOT Plaintiff's motion for class certification (Docket No. 17).

The Clerk shall enter judgment and close the file. Defendant shall recover its costs from Plaintiff.

IT IS SO ORDERED.

Dated: 4/12/2012

CLAUDIA WILKEN
United States District Judge

13